Good morning, your honors. May it please the court, my name is Paul Johnson. I'm a resident of the town of Skydive Phoenix, Inc. and I think both parties appreciate a discord break after the two skis. My client prevailed in a rule of summary judgment motion in the district court on the basis of a history of the cause, but the district court denied the three skis with the exception of the standard in the MNAC Section 117a. There are two issues today. One is, is this case an exceptional case? And the second one is, is the jurisdiction of the fee-shifting statute 12-340.1 applying? Since the briefing has been finished in this case, there's been a significant development. The Ninth Circuit decided in an en banc decision a sun-earth case, which we filed a Rule 28 letter on. And a sun-earth case has three important holdings of this manner. First of all, sun-earth adopted the octane fitness standard of the totality of the circumstances as the standard for awarding a jury's fees in an exceptional language in the Trademark Act. Second, it set an evidentiary standard for accordance on the evidence. It was held very convincing. And the third thing that sun-earth did was establish the abuse of discretion standard for review of all aspects of this kind of matter. Here, the district court erred by not following octane fitness totality of the circumstances of this case or test, and in large part declined to exercise its discretion at all. So, we failed to meet the agreements appropriate under octane fitness and under the existing Ninth Circuit rules. The second error that the district court made with respect to the exceptional ruling was the district court's mistaken belief that it had to reach the merits of the trademark dispute in order to find the case exceptional. So, not only did the district court not apply the totality of the circumstances test, but it also limited its own review by thinking it had to reach the merits of the trademark dispute in a case that was considered on the base of the contract. The court should reject the appellee's right for any reason, argument, and sentence, or in this case, back to the district court, for a consideration of a proper standard in the first instance. I think if the district court were to properly take a look at this case as the exceptional case, it would have found it to be exceptional. Again, the appellee's lost race judicata on the early summary judgment motion. Their attempt to get a second bite at the apple from after losing both in the trial court and the appeals court, in the state court, district court, easily found on race judicata that there was a valid judgment, there was an identity of claims, and there was a privity of parties. The same attorneys handled both cases, and the state court made a big deal out of the relationship between Mark Hogue and Skydye Phoenix, the appellant here. And so they were well aware of the closeness and the privity between Mr. Hogue and Skydye Phoenix. They even tried to plead around that issue in their complaint by saying that this, even though they lost in the state court, this was a different issue. So even the privity issue was not a very difficult issue for the district court to handle. They argued that the motion to dismiss was somehow a victory for them. On the motion to dismiss, which we brought, the district court really decided that it couldn't reach the merits of the motion to dismiss because the district court was limited to what was in the complaint and what the district court could take judicial notice of. And because some of the issues dealing with race judicata were not present in the complaint, it was simply a matter of the district court not being able to decide that motion on the record before it. And, in fact, the last line in the district court's opinion is basically an invitation to the parties to file summary judgment motions, which is what my client did, and I correct. In the motion to dismiss arguments, the district, in fact, alerted the plaintiffs here that there were serious problems with their analysis and with a race judicata defense. This case should never have even gone in the first place, and it's an exceptional case. On to the second issue, which is the application of errors from the state shifting statute 12-340-101. The district court also made a legal error here because the case does arise out of contact for at least three reasons. First of all, this case didn't seem to be a continuation of the case decided in state court and was, in fact, dismissed in the race judicata grounds. And if you look at the matter of Holiday Mobile Homes case, there the New Circuit found in a bankruptcy situation that there was a continuation, and the award was based on state court law, which was appropriate. Second of all, there are also errors from the cases. The state, in an attempt to circumvent the settlement agreement, also arises out of contact. And here the state court action was completely about the settlement agreement between our clients there and Skydive Arizona, and the federal action, I think, can be seen as an attempt to circumvent that settlement agreement by suing again on trademark issues when there were no one race judicata today. And, in fact, in the district court, Skydive Arizona tried to raise some new issues and evidence that they claimed happened after the state court decision, but those were obviously disposed of by the district judge as not being conditioned of evidence. And the third reason that the errors from the future of these statutes apply is that if you look at a Pelley's unfair competition claim, it's basically a trademark infringement claim. And in order to prevail on a trademark infringement claim, they would need to show that there was not consent. That's part of the affirmative case that the plaintiffs here would have had to show. And the consent goes back to the settlement agreement from the district, from the state court, where the permission that was given to my clients to use the domain name and issue extended to Skydive Phoenix, the defendant here. And that's clear from the state court record, and that's contained in the state court conclusion of law, number 11 at ER 60. So the permission was extended. They would have had to show as part of their affirmative case that there was consent. And again, we're back to the contract. So for those three reasons, we think that the state court de-shifting statute should apply because this case does, in fact, arise out of contract. And I'll see if there are any questions. I'll reserve the rest of my time. How does this case arise out of contract? The arising out of contract analysis under Arizona law allows torts to arise out of contract. If the contract is the origin of the dispute or if the dispute could not exist but for a breach of contract, and additionally, the situation with the settlement agreement. Could an infringement have taken place without a contract being an infringement? Well, there was a contract. There was a contract, but even if there weren't a contract, could the trademark infringement action have proceeded in the absence of a contract? Well, Your Honor, they would have had to allege trademark infringement beyond what had already been decided in state court, which they were able to do. But again, as part of their affirmative case, they would have had to show that there was no consent to the use of the right name. And it's the contract. And the state court's interpretation of the contract shows that there was consent. So I don't think it could have proceeded. In fact, it stalled because there was a breach of, they would have had to show a breach of the underlying contract in order to proceed. So for those reasons, infringement arises out of contract. Of course, it never got to that point because the case was decided in a summary judgment based on nothing. All right. All right. I'll reserve the rest of my time. Thank you very much. Good morning, Your Honors. Good morning. Our case is granted to GC with apologies. We will take a closer look at our arguments. So briefly, Your Honors, in this case, his attorney was not exceptional. And in the case of the court, Mr. Jacobs, Your Honors, apologies. This is not an exceptional case. It was not abuse for the district court to determine that this case was not exceptional. The court was not given a window into the merits of the land amendment claims. And it's really interesting to look at how their argument has kind of morphed from the district court and on into this court. Because they moved solely on this base judicata ground. No one made them move solely on a race judicata ground. They could have moved in front of the court and said, the merits of the claim are such that a completely lax merit, it stinks. It's garbage. They made the tactical choice to move solely based on race judicata, leaving the record undeveloped, without discovery. And then they only cited cases to Judge Reyes in one little page under the Land Impact, which all went to the merits, none of which the presenter argued or discussed to Judge Reyes. So it seems harsh to blame the district court for not figuring out that they had an exceptional case when the only cases they deemed the judge said, merits, merits, merits. And they didn't argue that. The language of the Land Act is what? It refers to case. It refers to the totality of the case, rather. Totality of the case. Right. But there's nothing unusual about or exceptional about an order that says, you're barred by judge race judicata. It happens every day. And the argument is that the statute, though, talks about the underlying case. And that's what the district court should have looked to. And the statutory language seems to support that. Not necessarily the basis on which it was decided, but the underlying case. How do we move forward? I would, maybe I'll be conceding something along the way of trying to develop kind of a unified theory of this. A case can be exceptional other than solely through the lens of the merits of the Land Act claim. So we concede that. We agree. And that's, I think, embedded in the premise of your question, Judge. So where does that take us here? Where the court, there were two pieces in what the judge said, one of which kind of cuts a little bit in our favor, one of which cuts a little bit the other way. The court basically acted like it had to be about the Land Act. The language is there. But on the same page, the court made the point that I just made to your honors, which is they haven't given me anything here that goes to the merits of those claims. So on the record that the movement made, all they were saying was, basically, it's a merit-y kind of inquiry, and we don't have any time we can show you where a court did what we're asking you to do here. The court couldn't find that and look for it. He indicated that. And also, the movement did not find an example where there was an affirmative defense raised to the kind of issue like this, and it was determined to be an exceptional case. So the court did make an inquiry. It's not like the court did nothing or gave no thought to this issue. And the court couldn't have, but for the sake of discussion, the court knew that it had to be really looking, looking, looking at this as something that could be an exceptional case, which I think it really did look, as you said, Dr. E. Fitness. But there was nothing put in the record about the merit. So the only argument for exceptionalism on this record that is before you for review and is preserved is the idea that this race-judicata issue can make it exceptional. Because this is three standard deviations from exceptional, there's no need to send it back to the district court and ask this court to determine what is so readily apparent on the limited face of their motion, which is one page long at this point. Their Lanham Act motion is one page long. It's a couple cases. So are you basically saying they're trying to get them both ways? Absolutely. They're trying to get an easy win and get fees because the underlying case is so open. Well, that's precisely what they did, Judge Schroeder. They moved with a one-page small motion about Lanham Act. And then they went to post-judge and asked the court to decide that the whole thing was kind of an abomination on the merits when they could have briefed and didn't really brief that. And then the other snitch is that below, their only case law they cited to Judge Reyes directly reflects the need to reach the merits of the Lanham Act claim to decide if it's exceptional. And in this court, their whole argument is that, well, if it's race judicata, well, of course it's exceptional because it's so horrible if it's race judicata. And they conflate improperly race judicata with frivolity, which is absurd logically speaking because you have tons of arguments that are close to the pen and don't quite get there on race judicata. And you look at the five cases. I won't march through them all in a linear way. But their cases are just awful. Those cases are truly exceptional cases. I mean, the guy named Garber, he's an angry pro se inventor with a facetious disorder against him that was already a prior determination on the merits that there was no infringement. He doesn't even bother with alleged infringement. Yeah, he's an exceptional case guy. The guy named Williams, six prior cases, that would be an exceptional circumstance. Or Piero, quote, just another saying he has long abused the federal judicial system. And there are two really strong distinguishing factors here that would make it impossible to reasonably find that the race judicata issue was other than reasonable and fairly litigable. Beyond good faith, it's a really fairly litigable issue. One thing that Judge Reyes in order to decide was Snyder and Phoenix was not a party in the prior case. So there was a real question as to the identicality of interest that had to be parsed. The court wanted evidence. The court got evidence. The court determined it. But even if you burrow down into the logic by which summary judgment was entered, there's a real last note issue back and forth here. The restatement decided by the court, I think it's Restatement of Judgments, section 59. And the district court relied on what they suggested, which is a comment E. And it basically said, well, we presume that there's this identicality between a closely held corporation and the owner. As is the case here, we presume that there's no reason to think they aren't really identical. But then in this case, you have the very significant fact that in the state court case that they're kind of beating us upside the head with, they went into court as Skydive Phoenix and said, you can't take discovery from me. You are not respecting and regarding appropriately my corporate separateness from Mark Hogue. So they totally want to have it both ways all over again. They went to the headquarters and said, Mark Hogue is not Skydive Phoenix. And then they see here, it's not only race judicata, but it's like a six-point basket. It's not a super clear point. It's race judicata, and it's horrible race judicata. And that's not fair. That's not logically consistent or right. Another reason, aside from the fact that Skydive Phoenix wasn't fair and that Skydive Phoenix protested that it was not equivalent to Mark Hogue in the other proceeding, is that you had continuing allegations of infringement. Now, Skydive Phoenix only came into existence in 2010, long after the set of facts that were fought about in state court were mostly set in stone. And so Skydive Phoenix was a relative newcomer to the scene. It wasn't a party to that case. And our client's allegations, which were unsuccessful as below, were that there was continuing infringement going on. And we cited to the court, I think it's at ACR 31, right at the end of our brief in front of the district court in this matter, there was a district case in the Eastern District of New York that said, we're not going to give collateral estoppel effect in a later matter that's filed under the Land Act, because there is a continuing changing course of dealing, and there's different and continuing commercial dealing going on. So look, we may be wrong. We already lost the case. We accept that. We didn't appeal that. We're not trying to change that. No, Your Honor. I'm not going to appeal a work in the matter at all, Your Honor. And so we cited to the court, and there's a logical argument, and there's a legal argument to be made, and a factual argument to be made, that there was continuing infringement. Now, they won because they prevailed on the district court to extend the race judicata effect to a non-party in the prior proceeding. And good for them. They won. We didn't appeal. But to say that we not only lost, but we super-duper lost because no one could reasonably oppose them, which is the argument that was just made, we'd respectfully say that goes too far. The purpose of the Land Act fee provision is what? Is it a sanction? Is it punitive? Is that what you're referring to? It is a sanction. It is punitive, Your Honor. And when you look at Octave Fitness, what you see is Justice Sotomayor is saying, well, we can't treat it as being exactly coextensive with the court's inherent authority to sanction in light, alias, of pipeline. Because if we do that under the federal statute, we're basically saying either Congress didn't know about inherent authority or we're reading out an additional increment. But in reading in person Justice Sotomayor's opinion, it's pretty clear that there's a pretty small additional increment that the Venn diagram is too fairly overlapping circles because when an Octave Fitness, the Supreme Court set out the standard for what makes something basically fee recoverable under the statute, it sets out a non-exhaustive list of factors. And that non-exhaustive list of factors is coterminous with the prior standard that Octave Fitness displaced. It's just that the Justice was clarifying in the opinion that there may be some cases where even though it's not sanctionable, there's an additional layer on the onion where it was so unreasonably renegaded that we will then do it. So it's true to be intellectually fair in answering your question, Judge Sotomayor, it's a little more extensive than the inherent authority to sanction, but not a heck of a lot more extensive. And again, you've given us examples, many of them, Garm, Huck, Williams, Piero, where the facts were really egregious. Our facts are remotely like that. We had a continuing infringement on the thing. We had a fair factual argument to that effect. We had an unidenticality of the parties. It couldn't be resolved. And then a further fact that we haven't paused on is that in the prior case, it was a jury trial. All these cases where people are getting saves in and they're having fiends against them. It's because in a prior case, there was a summary form of adjudication where no reasonable person could think in matter two that there was an issue because, look, in matter one, they were just slapped down, and it was obviously not an issue. All we know from the prior case is that a jury could have reasonably found the outcome that it found, but there were facts sufficient to support that outcome. That's all we know from the state court proceeding. We know that they could win, and that that's fair. We don't know that we wouldn't have won that trial eight times out of ten if there were ten such trials. And so, again, all it takes you to is the far narrower issue, the narrower issue that presents itself of race judicata and whether it was fair to seek that against Skydive Phoenix separately. We're not really talking about some sort of horribly meritless underlying claim. We failed to obtain summary adjudication in the state court. It was fairly litigated, and it's a different party that didn't exist for most of the time. If we could turn briefly to the Arizona statute, ARS-12-340-101-A. This is a case that's controlling and on point that was in our briefing, which is called Fairway Constructors from 1997 to 2008 that fairly answers the question. It basically says, look, even if there is a contract that is significant and in the center of the matter, if you're not a party to that contract, but other commercially related entities are the parties to the contract, the Arizona Court of Appeals held in Fairway Constructors, that's not going to be a case arising out of contract as to you. So we have that. We have the question Judge Rawlinson that your point went exactly to, which is my second point, which is you don't need a contract to exist for this claim to be brought. You would have had exactly the same case if there was no contract. And that's not appropriate because Mark Hogue made the contract in 2002 at Skydive Phoenix. Oh, it wasn't a party. It didn't exist yet. So how does that suit arise out of a contract eight years prior to the existence of the entity that says it arises out of the contract when they are not a party to the contract, especially given Fairway Constructors? And just a further word, they have this kind of preclusive estoppel-type argument that, well, the district court here must have been required to award fees because fees were awarded in the state court proceeding earlier. But that really kind of misses the point of all the experience under ARS 12-341-01-A. It's just black-and-white. Even if you qualify for fees, the court every day wakes up and has the discretion to grant or not grant based on a host of considerations. It might have been right to grant after the trial in the state court and not right to grant in the federal district court here. Just as under the Lilum Act, even if a case is exceptional, the court is not required to award fees. That's purely discretionary. And nothing in the record of this case indicates that Judge Reyes was troubled by a litigation or the arguments were found trivial or insubstantial. The arguments that I suggested to you were fairly and reasonably litigable. And for all these reasons, we would urge you to affirm the result from below. Counselor, may I ask you, is there a case we can look to that supports the district court's ruling that if the case is decided on a non-merits basis, that attorney's fees are ineligible or not warranted? Are there no cycle in that? Yeah, that's not on the substantive merits. This was based on the race to the cottage, right? Yes. So the district court said because the merits are not examined, the fees are not available under the Lilum Act. And I'm asking you, what case supports that ruling? I meant to concede, Judge Rawlinson, that there could be an award of fees outside of the merits intrinsic to the Lilum Act claim. So I think I'm conceding that that isn't an exactly correct statement of the law with the district court below. If that is the case, why shouldn't we review the case for the district court to consider the issue under the correct law? Because this record could have presented the district court with a chance to find an exceptional case because they would have needed to argue that the merits were exceptional. They didn't try. There's no record here that could have happened. They shouldn't get a do-over for that. And then the race to the cottage was obviously fairly legible and a close question. Thank you. I just have a little trouble with Octave Fitness. This is just what the court was trying to do. Weren't they trying to interpret that as trying to broaden a little bit the availability of fees from what the federal circuit was doing? I think that a little bit would be my answer to that. Only a little bit because the federal circuit's formulation was really, gosh darn, restrictive. It was subject of unreasonability. It had an object of unreasonability. And this court didn't have such a narrow view of it. And this court's precedents, I think, are much more consistent with where Octave Fitness landed. It was just stressing that they didn't want the courts of appeal to be grafting big clunky mechanical tests onto this very narrow language, which, as Justice Sotomayor wrote, the analysis begins and ends with this one sentence. Thank you. Thank you, Justice. Thank you. Mr. Otto. Yes, sure. Thank you. First of all, it should be emphasized that Octave Fitness is a totality of the circumstances case. It's a U.S. Supreme Court ruling. It's now been adopted by this court for trademark cases under Sun-Earth, and the criteria that are mentioned are whether the case stands out from others based on the strength of the claims or how it was litigated. And here, we don't think the strength of the claims were very strong at all for the reasons I catalogued before while I was arguing that you shouldn't decide this case on a right-free-reason basis. You should send it back to the district court and let the district court consider the totality of the circumstances in the first place. The House analysis says that it did not attempt to make a merits-based argument in the district court. What's your response? Well, there was no reason to refer you to a clear race judicata case. We also had issue proposal. And the district court didn't even need to reach issue proposal because you decided to use race judicata rules. It wouldn't have happened. In all economics, we were especially efficient to go to the merits when we had such a clean race judicata case. In the fee request, was there any discussion of the merits? Well, in the fee request, first of all, it was more than just one page. It was several pages describing the various factors and the terms that were used to find the case and accept them. And there, we didn't go into the merits there. But every race judicata case has, in here and in it, an analysis of the merits because the merits were analyzed and we had prevailed in the previous case. So every race judicata argument has had an analysis of the merits. But I think that this case can be found exceptionally subtle. What happened in the district court were the various pleadings and the various things that were done. The other thing about Octane Fed is this, is that it takes from Octane, a case called High Market, from a case called Authority, that the factors that the district court is supposed to consider are frivolousness, motivation, objective unreasonableness, both in the factual and in the legal components of the case, and the need for particular circumstances to advance considerations of compensation and deterrence. And, Judge Lurie, that goes to your previous question about what the underlying motivation of a fee-shifting analysis is and does not apply to trade policies. And it's certainly true that the statute, 1117A, refers to the case or cases, which I think ought to be read broadly in the same way that Octane Fed refers to the totality of the circumstances here. And the judge never reads the totality of the circumstances. In fact, he made the decision based simply on the fact that the mistaken belief that he had in those parameters couldn't be justified in any case. As far as the relationship to Mr. Hogan, Scott I. Phoenix, they go back to the state court and pull out a situation where, for purposes of discovery, we resisted them discovering information about Scott I. Phoenix because he was pulling a party. That's not the same. That does not equal no committee for registry of account purposes. In fact, your statement is very clear about that, that in a closed-end corporation, which Scott I. Phoenix is, that the owner is considered in committee with the corporation. And that's why it was such an easy analysis under registry of account on privity in the district court. With regards to the state law fee sifting, the Fairway Contractors case is easily distinguished. In that case, there were two parties that had a contract between them, and they sued a third party who wasn't in the contractual situation and was completely untoward. And the third party prevailed and asked for fees. The fees were granted, but there was no connection between the third party and a contract between the two parties that sued. The third party was a complete stranger to the contract. Here, Mr. Hogan and Scott I. Phoenix are in privity, and this is shown by what the state court decided, which was that the use of the domain name could be extended to Scott I. Phoenix because of the relationship. And so Scott I. Phoenix here, again, it's at conclusion law number 11 ER 16, but Scott I. Phoenix was in the same situation to be able to use the domain name. So there's a direct contractual connection here because that finding came out of the contract that was adjudicated at the state court. It's not like Fairway Contractors where two parties are preparing a contract together and they're suing a third party that's not in the contract. All right, thank you, counsel. I appreciate your time. Thank you to both counsel cases. Our D.P. is submitted for decision by the court. That concludes our calendar for today. We are recessed until 9 a.m. tomorrow morning.
judges: Schroeder, Rawlinson, Stafford